UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MIGUEL JUAREZ,

                     Petitioner,

                              **REPORT AND RECOMMENDATION**
                                 **19 CV 07179 (LDH)(LB)**

    - against -

MARK ROYCE,

                     Respondent.

-----------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Petitioner Miguel Juarez files this *pro se* petition seeking a writ of *habeas corpus* pursuant to 28 U.S.C. §2254 challenging a 2014 New York Supreme Court, Kings County, conviction of Murder in the Second Degree, C.P.L. §125.25. Petition (Hereinafter "Pet."), ECF No. 1. The Honorable LeShann DeArcy Hall referred this petition to me for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

**I.    Underlying Crimes**

      According to the evidence adduced at trial,[1] at approximately 3:00 a.m. on July 14, 2012, petitioner and co-defendant Gilberto Serrano arrived at La Parranda Bar in the Bensonhurst neighborhood of Brooklyn. Trial Tr., ECF No. 6-4, Alonso: 14–15.[2] Petitioner and Serrano

---

[1] Petitioner was tried by jury in New York Supreme Court, Kings County, from June 17 to July 2, 2014, before the Honorable Vincent DelGiudice. Trial Tr., ECF No. 6-1 at 1.

[2] For ease of reference, all citations are to the ECF pagination of the state court record and the parties' briefs. References to the trial transcript include the names of the witnesses and refer to the cited page of that witness' testimony.

consumed beer at the bar.[3] Alonso: 15. While petitioner and Serrano were in the bar, Serrano recognized several individuals, including the victim, Abel Xochimictl. Id., Alonso: 15. Petitioner later told police that Serrano said he had problems with Xochimictl in the past, but petitioner told Serrano that they should "just enjoy" their time at the bar. Id., Alonso: 15. After drinking, petitioner retrieved a backpack he had checked with the bouncer before entering the bar. Id., Alonso: 16. At approximately 4:00 a.m., surveillance video captured petitioner and Serrano leaving the bar, followed three minutes later by Xochimitcl. Trial Tr., ECF No. 6-2, Alonso: 195–200. Outside the bar, petitioner and Serrano approached Xochimitcl and petitioner asked him, "que barrio," which translates to "what neighborhood" and is a phrase used to determine an individual's gang membership. Trial Tr., ECF No. 6-4, Alonso: 16. Xochimictl answered that he was from "Panchitos, Brighton Beach." Id., Alonso: 17. Serrano struck Xochimitcl with a bottle, and Xochimitcl fell to the ground. Id., Alonso: 17.

A taxicab driver named William Hurtado witnessed the fight from his car, which was parked near the bar. Trial Tr., ECF No. 6-1, Hurtado: 103–05. Contrary to the surveillance video, Hurtado testified that he saw Xochimitcl come out of the bar prior to petitioner and Serrano. Id., Hurtado: 104–05. Hurtado testified that Serrano hit Xochimitcl, then Serrano and petitioner stabbed Xochimitcl with knives and broken bottles. Trial Tr., ECF No. 6-1, Hurtado: 113; ECF No. 6-2, Hurtado: 33. While Xochimictl was on the ground, petitioner knelt and stabbed him three times in the neck. Trial Tr., ECF No. 6-1, Hurtado: 118. In a statement to police, petitioner said that he only slashed Xochimitcl once on the arm. Trial Tr., ECF No. 6-4, Alonso: 18. Hurtado testified that after the men stabbed Xochimitcl, Serrano yelled "La Raza Vive," which translates

---

[3] It is unclear from the record how much beer petitioner consumed. Detective Alonso testified at trial that petitioner told him he and Serrano had ordered a six-pack, but the petitioner states that he and Serrano consumed "at least six beers each." Trial Tr., ECF No. 6-5, Alonso: 16; Pet.

to "The Race Lives." Trial Tr., ECF No. 6-1, Hurtado: 120. La Raza is the name of a gang. Id., Hurtado: 120. Serrano and petitioner then ran away. Id., Hurtado: 120. A second eyewitness, Francisco Ascencio, testified at trial but recalled substantially similar but slightly different facts. Trial Tr., ECF No. 6-2, Ascencio: 58–104.

When police arrived, they found Xochimitcl lying on the street, bleeding heavily from his neck with multiple lacerations on his body. Trial Tr., ECF No. 6-1, Chan: 63. Xochimitcl died from the stab wounds he received on his face, neck, and torso. Trial Tr., ECF No. 6-3, Pereschino: 33–35. Eyewitness Hurtado identified petitioner and Serrano as the attackers to police from images captured on the surveillance video outside the bar. Id., Alonso: 137.

Several weeks later, on July 28, 2012, Hurtado recognized petitioner and Serrano in a store in Bensonhurst. Trial Tr., ECF No. 6-1, Hurtado: 128–29. Hurtado watched the two men exit the store and enter a park across the street. Id., Hurtado: 128. Hurtado called police, who apprehended petitioner and Serrano. Id., Hurtado: 130–32. As police brought petitioner and Serrano out of the park, Hurtado identified them. Trial Tr., ECF No. 6-2, Hurtado: 47. Petitioner and Serrano were brought to the precinct. Id., Hurtado: 47. Petitioner was advised of his constitutional rights, and he made a statement to police. Trial Tr., ECF No. 6-4, Alonso: 4, 10–20. Eyewitness Ascencio failed to identify petitioner in a lineup on July 28, 2012. Id., Alonso: at 41.

## II.     Petitioner's Trial

Petitioner and co-defendant Serrano were tried jointly before separate juries. See Trial Tr., ECF No. 6-1 at 3. Prior to opening statements, the Court instructed the jury that statements made by the prosecution and defense were not to be considered evidence. Trial Tr., ECF No. 6-1 at 16.

During opening to petitioner's jury, the prosecution described the murder as "brutal" and "heinous," and explained that petitioner and co-defendant Serrano were acting in concert when

they stabbed Xochimitcl to death "in cold blood." Trial Tr., ECF No. 6-1 at 28. The prosecution noted that Xochimitcl's mother had the "awful task" of identifying his body. Id. at 31.

At trial, eyewitnesses Hurtado and Ascencio testified with the assistance of Spanish interpreters in front of both juries. Trial Tr., ECF No. 6-1, Hurtado: 100; ECF No. 6-2: Ascencio: 58. During cross-examination, Hurtado was reluctant to identify the color of the car he was driving the night Xochimitcl was killed; he said, "do I have to tell the color? Remember, they have people on the outside." Trial Tr., ECF No. 6-1, Hurtado: 169. The Court ordered Hurtado to say the color of the car, and he did. Id., Hurtado: 170. Shortly later, during the same cross-examination, Hurtado asked to speak with the Court. Id., Hurtado: 198. In a conference not heard by the jury, the court interpreter explained that Hurtado was "reluctant to continue testifying" because he "saw a gang member in the courtroom and he [felt] intimidated." Id. at 200. A court officer explained that he had observed Hurtado become "disturbed" when a man entered the room. Id. at 204. The officer spoke to the man, who called himself Moran, and determined that Moran wanted to speak to counsel for co-defendant Serrano. Id. at 204. Hurtado later told the prosecution that he recognized Moran to be a "high ranking . . . gang member" that he saw frequently in the "Coney Island/Brighton Beach area." Id. at 213. According to Hurtado, when Moran entered the courtroom, he made eye contact with co-defendant Serrano and "Serrano then sneered at [Hurtado]." Id.

Counsel for Serrano asked the Court to preclude the prosecution from questioning Hurtado about his change in demeanor, and the prosecution opposed this request. Id. at 242–250. During the discussion, counsel for petitioner objected and stated that Hurtado's testimony did "not pertain" to petitioner because petitioner was not associated with Moran. Id. at 246. The Court disagreed and permitted the prosecution to question Hurtado on redirect regarding his change in demeanor.

4

Id. at 249. The Court explained that Hurtado's testimony was relevant to petitioner's case because Hurtado's "stark and sudden abrupt change" in demeanor was witnessed by petitioner's jury. Id. at 246.

Hurtado testified that a member of La Raza had come into the courtroom, "looked at [Hurtado]," then looked at Serrano. Trial Tr., ECF No. 6-2, Hurtado: 41. Hurtado testified that he became "worried for [his] daughter and [his] wife," because Moran and Serrano were in a gang and "they might order something done." Id., Hurtado: 42.

Later in the trial, a forensic biologist with the New York City Office of the Chief Medical Examiner testified that petitioner's DNA was found on a knife recovered at the scene of the fight. Trial Tr., ECF No. 6-5, Orans: 131, 151.[4]

During summation, the prosecution described petitioner as "selfish" because he "shifted all blame from himself" onto Serrano. Trial Tr., ECF No. 6-5 at 39. The prosecution said that petitioner's DNA was found on the handle of the knife recovered from the scene, which meant that petitioner had used "that knife" to "stab the victim with such force that he cut himself." Id. at 45. The prosecution argued that eyewitnesses Hurtado and Ascencio did what "any good Samaritan would do" when they called 911, and both eyewitnesses were motivated to ensure that "the people who killed Abel Xochimitcl [were] brought to justice." Id. at 49. The prosecution said that Hurtado was haunted by "the savage way in which . . . defendants stabbed the victim to death," and "the way in which the victim was drowning in his own blood." Id. at 50.

Counsel for petitioner requested that a charge of intoxication be given to the jury because petitioner had stated that he was intoxicated the night of the incident; counsel for petitioner also argued that petitioner's intoxicated behavior was captured on the surveillance video prior to the

---

[4] Portions of the trial transcript were docketed out of order, resulting in this testimony coming later in the ECF document than in the parties' summations.

fight. Id. at 177. The Court denied petitioner's application for the intoxication charge, explaining that there was "no evidence to establish that the level of alcohol consumption by [petitioner] would have adversely affected his ability to form the necessary mens rea." Id. at 179.

The Court gave an instruction regarding gang affiliation, telling the jury that "membership in a gang by itself is not a crime," and evidence presented at trial regarding gang affiliation was introduced for the jury's consideration of "identification and motive," not petitioner's "propensity or . . . predisposition to commit the crimes charged." Id. at 77. The Court also instructed the jury before the summations that statements made by the prosecution and defense during summation were not to be considered evidence. Id. at 5.

The jury found petitioner guilty of Murder in the Second Degree. Id. at 95. Petitioner was sentenced to a term of 25 years to life in prison. Pet., ECF No. 1 at 1.

**III.    Procedural History**

Petitioner appealed his conviction to the New York Appellate Division, Second Department, arguing that: (1) he was denied his Fourteenth Amendment right to a fair trial when the Court allowed a witness to testify that he feared gang retribution due to the presence of a spectator in the audience, who was allegedly gang affiliated; (2) he was denied a fair trial under the Fifth and Fourteenth Amendments when the Court refused to give an intoxication charge; and (3) he was denied his Fourteenth Amendment right to a fair trial when the prosecution inflamed the jury's emotions through "grisly depictions of the crime scene, references to the tragic impact on the victim's family, and appeals to sympathize with the people's witness," and implied that the petitioner was a gang member and a liar. See Def.-Appellant's Br., ECF No. 6-6 at 37, 48, 54.

The Appellate Division affirmed the conviction on May 22, 2019. People v. Juarez, 98 N.Y.S.3d 884 (N.Y. App. Div. 2019). Although the appellate court found that the trial court should

not have allowed the prosecution to elicit testimony from Hurtado that he felt intimidated by a spectator in the courtroom, the appellate court ruled that the error was harmless, as there was "overwhelming evidence of the defendant's guilt, and no significant probability that the alleged error contributed to [petitioner's] conviction." Id. The appellate court also affirmed the trial court's determination not to give an intoxication charge to the jury, as there was "insufficient evidence that [petitioner] was so intoxicated that a reasonable person could determine that [petitioner] was unable to form the requisite criminal intent." Id. Finally, the Court held that petitioner's claim that he was deprived a fair trial due to prosecutorial misconduct was without merit, reasoning that the "challenged remarks" were not "'so egregious as to deprive the defendant of a fair trial.'" Id. (quoting People v. Alphonso, 43 N.Y.S.3d 83 (N.Y. App. Div. 2016). Petitioner's request for leave to appeal to the New York Court of Appeals was denied on July 31, 2019. People v. Juarez, 130 N.E.3d 1274 (N.Y. 2019).

## IV.    Instant Petition

Petitioner timely filed the instant *pro se* petition seeking a writ of *habeas corpus* under 28 U.S.C. §2254. Pet., ECF No. 1 at 9. Petitioner challenges his conviction on the same grounds he presented on direct appeal, stating that he was denied a fair trial because: (1) the Court allowed a witness to tell the jury that he "feared gang retribution due to the presence of a gang-affiliated spectator who had no connection to the petitioner;" (2) the Court refused to give an intoxication charge; (3) the prosecution "inflamed the jury['s] emotions," implied the petitioner was a gang member, and "denigrated petitioner as a 'liar' while vouching for the credibility of the People's witnesses." Id. at 2. Respondent opposed the petition. ECF No. 6. Petitioner filed a Traverse and Memorandum of Law in Support of Petitioner's Writ of Habeas Corpus ("Traverse"). ECF No. 8.

## DISCUSSION

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "shall be presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (citing § 2254(e)(1)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal

law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original); see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II.    Petitioner's Claims

Petitioner raises three grounds for habeas review: (1) that he was denied a fair trial when the Court permitted testimony regarding witness intimidation, (2) that he was denied a fair trial when the Court refused to give an intoxication charge, (3) that he was denied a fair trial due to prosecutorial misconduct. Pet., ECF No. 1 at 2.

### A.    Improperly Admitted Testimony

Petitioner argues that his Fourteenth Amendment right to a fair trial was violated when the Court allowed eyewitness Hurtado to tell the jury that he feared gang retribution because a gang affiliated individual had entered the courtroom.[5] U.S. Const. Amend. XIV; Pet., ECF No. 1 at 4. Additionally, petitioner argues that Hurtado's testimony was prejudicial and denied petitioner his due process rights, because the testimony improperly caused the jury to see petitioner as gang affiliated. Pet., ECF No. 1 at 4. The Appellate Division concluded that, while admission of the challenged testimony was an error, that error was harmless in light of the "overwhelming evidence

---

[5] In the Traverse, petitioner also argues that his Sixth Amendment right to an impartial jury was compromised when the challenged testimony was permitted by the Court. ECF No. 8 at 8.

of the defendant's guilt," and absence of a "significant probability" that the error contributed to petitioner's conviction. Juarez, 98 N.Y.S.3d at 884. The state court's decision that introduction of the testimony was a harmless error was not contrary to or an unreasonable application of clearly established Federal law. Thus, petitioner's claim for habeas relief on these grounds should be denied.

### i. Harmless Error

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court held that when reviewing whether a state court error resulted in a constitutional violation, a federal habeas court should determine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. Citing principles of "finality . . . comity and federalism," the Court concluded that the "substantial and injurious effect" standard, adopted from Kotteakos v. United States, 328 U.S. 750 (1946), is "better tailored to the nature and purpose of collateral review" than the "harmless beyond a reasonable doubt" standard applied on direct review of criminal proceedings.[6] Brecht, 507 U.S. at 623, 635–37. In Fry v. Pliler, 551 U.S. 112 (2007), the Court concluded that even after the passage of the AEDPA, federal courts should still apply the Brecht standard when analyzing state court convictions for constitutional errors on collateral review. Fry, 551 U.S. at 119.

To determine whether erroneously admitted evidence had a substantial or injurious effect on the jury's verdict, the Brecht Court analyzed how much attention was paid in the trial transcript to the erroneously admitted evidence, and whether there was "other circumstantial evidence [that] pointed to petitioner's guilt." Brecht, 507 U.S. at 639. In applying the Brecht standard, the Second Circuit has advised courts to weigh "the importance of the witness's wrongly admitted testimony,

---

[6] The "harmless beyond a reasonable doubt" standard is drawn from Chapman v. California, 386 U.S. 18 (1967).

and the overall strength of the prosecution's case." <u>Wray v. Johnson</u>, 202 F.3d 515, 526 (2d Cir. 2000). Additionally, courts should consider whether the erroneously admitted evidence was "material to the establishment of the critical fact or whether it was instead corroborated and cumulative." <u>Id.</u>

Here, the appellate court adjudicated the question of harmlessness, and their conclusion that admission of the testimony was harmless is subject to deferential review under 28 U.S.C. §2254(d)(1). The admission of Hurtado's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict because the testimony did not describe the crime and was not material to establishing that petitioner caused, and intended to cause, the death of Xochimitcl. Trial Tr., ECF No. 6-2, Hurtado: 39–43. The stated purpose of the challenged testimony was to address Hurtado's change in demeanor when a gang affiliated individual entered the courtroom. Trial Tr., ECF No. 6-2 at 41. At no point did Hurtado state, or the prosecution intimate, that petitioner had threatened the witness. Furthermore, the erroneously admitted testimony was brief, occupying four pages of an almost 900-page trial transcript. Trial Tr., ECF No. 6-2 at 39–43; ECF No. 6-5 at 77. Additionally, the judge explicitly instructed the jury that "membership in a gang by itself is not a crime," and evidence presented at trial regarding gang affiliation was not introduced for the purpose of revealing petitioner's "propensity or . . . predisposition to commit the crimes charged." ECF No. 6-5 at 77.

Additionally, the erroneously admitted evidence was not central to the verdict, especially when considering the other substantial evidence of petitioner's guilt, including surveillance video capturing petitioner at the scene of the crime immediately prior to the assault, petitioner's DNA on the handle of the knife recovered from the scene, and eyewitness testimony recounting the assault. Trial Tr., ECF No. 6-2 at 195–200, ECF No. 6-5, 131, 151, ECF No. 6-3 at 137. Moreover,

though petitioner and co-defendant Serrano did not admit to fatally stabbing Xochimitcl, both admitted to assaulting him. Trial Tr., ECF No. 6-3, Alonso: 123, Trial Tr., ECF No. 6-4, Alonso: 18.

Thus, the state court's decision regarding the erroneously admitted evidence being harmless error was not contrary to or an unreasonable application of clearly established Federal law. See Williams v. Smith, No. 10-CV-03043(JG), 2011 WL 96735 at *21 (E.D.N.Y. Jan. 11, 2011)[7] (concluding that petitioner did not meet the Brecht standard where the erroneously admitted testimony occupied a minor portion of the transcript, there was no testimony that petitioner had threatened either witness, the prosecution did not tell the jury that petitioner had threatened the witnesses, and the trial court explicitly instructed the jury that there had been no allegation that petitioner had threatened the witnesses).

### ii. Due Process Claim

On appeal, petitioner argued that admission of the testimony denied petitioner his due process rights because the testimony was prejudicial and caused the jury to associate petitioner with gang activity, even though petitioner did not have a connection with the allegedly gang affiliated spectator and petitioner was not a member of a gang. Def.-Appellant's Br., ECF No. 6-6 at 39. Here, admission of the challenged testimony did not violate petitioner's due process rights, because the testimony was not material to establishing petitioner's guilt, the testimony was not lengthy, and the trial court instructed the jury on gang affiliation.

In addition to conducting a harmless error analysis under Brecht, a federal habeas court may "review an error of state evidentiary law" to determine whether petitioner's due process right to a fair trial was violated. Freeman v. Kadien, 684 F.3d 30, 35 (2d Cir. 2012). In Dowling v.

---

[7] The Clerk of Court is directed to send petitioner the attached copies of all the unreported cases cited herein.

United States, 493 U.S. 342 (1990), the Supreme Court held that when reviewing a state court proceeding for due process violations, a federal habeas court should examine whether the erroneous admission of evidence was "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling, 493 U.S. at 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790). A violation of a fundamental conception of justice occurs when "the erroneously admitted evidence" is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) ("In short [the erroneously admitted evidence] must have been 'crucial, critical [and] highly significant.'") (quoting Nettles v. Wainwright, 677 F.2d 410, 414–15 (5th Cir. 1982)). The Second Circuit has stated that not all "erroneous admissions" of evidence are "errors of constitutional dimension." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (abrogated on other grounds by Perry v. New Hampshire, 565 U.S. 228 (2012)).

To determine whether erroneous admission of evidence denied a petitioner a fundamentally fair trial, courts examine similar factors as in the Brecht harmless error analysis; specifically, courts consider the length of the erroneously admitted evidence in the trial transcript, the strength of the properly admitted evidence in proving petitioner's guilt, and whether the trial court judge gave curative instructions. See Dunnigan, 137 F.3d at 126–27 (concluding that admission of prejudicial testimony did not constitute a due process violation when the testimony made up a small part of the trial transcript, and there was otherwise strong evidence of petitioner's guilt); see also Collins, 755 F.2d at 19 (holding that erroneously admitted hearsay testimony did not constitute a due process violation warranting habeas relief where the testimony was not "sufficiently substantial" or "crucial" to proving defendant's guilt, the properly admitted evidence was strong, and "the

erroneously admitted hearsay did not directly attribute to [petitioner] the commission of the crime charged.").

For the reasons stated in the harmless error analysis above, petitioner was not denied his due process right to a fundamentally fair trial when the challenged testimony was admitted, because the testimony was not so material that it fell into one of the "narrowly" defined "categor[ies] of infractions that violate 'fundamental fairness.'" Dowling, 493 U.S. at 352 (quoting Lovasco, 431 U.S. at 790). See Williams, 2011 WL 96735 at *21 (concluding that erroneously admitted testimony did not violate petitioner's due process right to a fundamentally fair trial where the testimony "constituted a minor portion of the record and the judge twice gave the jury curative instructions . . . noting there was no evidence that [the witness] had been in any way threatened by [petitioner].") Therefore, I respectfully recommend that petitioner's claims related to the introduction of this testimony should be denied.

## B. Petitioner's Right to a Fair Trial: Intoxication Charge

Petitioner argues that his right to a fair trial was violated when the trial court refused to charge the jury on intoxication, despite evidence that petitioner had shared a "bucket of beers" with co-defendant Serrano in the hour before the incident, petitioner was captured on surveillance video acting intoxicated prior to the incident, petitioner had no motive to kill Xochimitcl, and petitioner told police during his interrogation that he was intoxicated at the time of the incident. Pet., ECF No. 1 at 5. The appellate court affirmed the trial court's decision not to instruct the jury on intoxication, concluding that there was "insufficient evidence" that petitioner was so intoxicated, a reasonable person could determine he lacked capacity to form the requisite intent. Juarez, 98 N.Y.S.3d at 884. The state court's decision was not contrary to or an unreasonable

application of clearly established Federal law, and thus petitioner's claim for habeas relief should be denied on this ground.

To succeed on a petition for a writ of habeas corpus based on a state court's failure to charge the jury on a defense or justification, a petitioner must show that absence of the instruction "violated some right which was guaranteed [to petitioner] by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). "Courts have granted habeas relief" for failure to charge the jury on justification "where the evidence supported a justification charge under state law and where the erroneous failure to give such a charge was sufficiently harmful to make the conviction unfair." Davis v. Strack, 270 F.3d 111, 123–24 (2d Cir. 2001). In Davis v. Strack, the Second Circuit established a three-part test to determine whether the failure to charge deprived petitioner of a fair trial: courts must determine (1) whether the justification charge was "required as a matter of New York state law," (2) whether failure to give the charge violated a right guaranteed to petitioner by the Fourteenth Amendment, and (3) whether the "state court's failure was of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254." Davis, 270 F.3d at 124.

### i. Intoxication Charge under New York State Law

According to the first prong of the Davis test, a federal habeas court must determine whether a jury instruction was required as a matter of state law. Davis, 270 F.3d at 124.  Under New York law, intoxication "is not . . . a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication . . . may be offered by the defendant whenever it is relevant to negative an element of the crime charged." N.Y. Penal Law § 15.25. New York courts have held that an intoxication charge "should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis." People

v. Perry, 462 N.E.2d 143 (N.Y. 1984). Evidence in the record to support an intoxication charge "requires more than a bare assertion by a defendant that he was intoxicated." People v. Gaines, 638 N.E.2d 954, 955 (N.Y. 1994). Defendant must present evidence to "corroborate his claim of intoxication, such as the number of drinks, the period of time during which they were consumed, the lapse of time between consumption and the event at issue, whether he consumed alcohol on an empty stomach, whether his drinks were high in alcoholic content, and the specific impact of the alcohol upon his behavior or mental state." Id.

Here, the appellate court found there was "insufficient evidence that [petitioner] was so intoxicated that a reasonable person could determine that [petitioner] was unable to form the requisite criminal intent." Juarez, 98 N.Y.S.3d at 884. Affording the appellate court's decision the deference due under the AEDPA, petitioner's claim should be denied.

Petitioner's statement that he and his co-defendant Serrano consumed a "bucket" of beers was not sufficient to prove he lacked intent to commit the underlying crime. See People v. Beaty, 999 N.E.2d 535, 536 (N.Y. 2013) (concluding that defendant failed to establish his entitlement to an intoxication charge where "the only record evidence of defendant's intoxication was his self-serving statements and the victim's testimony that she smelled alcohol on defendant's breath.") Although, by petitioner's account, he and his co-defendant consumed beers at the bar within one hour of the assault, the evidence adduced at trial failed to corroborate his claim of intoxication. ECF No. 6-4, Alonso: 15.

As respondent noted in the Affirmation, petitioner's behavior prior to the assault did not demonstrate that he was too intoxicated to form a culpable mental state for criminal intent. ECF No. 6 at 3. At the bar, petitioner counseled his co-defendant Serrano to "just enjoy" their time at the bar and not engage with Xochimitcl. ECF No. 6-4, Alonso: 15. Additionally, petitioner

retrieved a bag he had left with the bouncer. Id., Alonso: 16. Furthermore, petitioner asked Xochimitcl what gang he was from, and petitioner told police that he only slashed Xochimitcl once on his arm. Id., Alonso: 15, 18. These facts support the state court's conclusion that petitioner was not so intoxicated that he lacked the requisite intent to commit the underlying crime. See People v. Sirico, 952 N.E.2d 1006, 1007 (N.Y. 2011) ("The uncontradicted record evidence, including defendant's own account, supports the conclusion that his overall behavior on the day of the incident was purposeful. Accordingly, defendant was not entitled to an intoxication charge.").

### iii.   Due Process

The second prong of the Davis test is whether, if an instruction was required under New York law, the trial court's failure to give the instruction violated petitioner's due process rights. Davis, 270 F.3d at 124. For an erroneous jury instruction to constitute a due process violation, "it must be established not merely that the instruction is undesirable [or] erroneous," but that the instruction "so infected the entire trial that the resulting conviction violat[ed] due process." Cupp 414 U.S. at 146–47.

Here, petitioner argues about the court's failure to charge, but New York law did not require an intoxication charge. However, even if the trial court's failure to offer the charge violated state law, petitioner's due process rights were not violated, because there was not sufficient record evidence corroborating petitioner's level of intoxication, nor was there record evidence that petitioner's level of intoxication impacted his intent to commit the underlying crime. See Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."); see also Williams, 2011 WL 96735 at *12 (concluding that the denial of a non-slayer charge "did not rise to the level of a constitutional

violation," because "there [was] 'no basis to conclude that a jury would have responded differently had the charge been given'") (quoting Blazic v. Henderson, 900 F.2d 534, 543 (2d Cir. 1990)).

### iii.    Review under 28 U.S.C. §2254

The final prong of the Davis test is whether the state court's failure to give an instruction is of "such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. §2254." Davis, 270 F.3d at 124.

As established above, the trial court's decision not to charge the jury on intoxication was appropriate under New York law, and denial of the instruction did not violate petitioner's due process right to a fundamentally fair trial. Additionally, the appellate court's reasoning was not contrary to or an unreasonable application of clearly established Federal law, as the Supreme Court has not held that juries must be instructed on intoxication as a defense to forming the requisite mental state for culpability. See Montana v. Egelhoff, 518 U.S. 37 (2013) (concluding that the Due Process Clause does not guarantee "the right to introduce all relevant evidence," and that respondent had failed to establish that "defendant's right to have a jury consider voluntary intoxication evidence [was] a 'fundamental principle of justice.'"). Therefore, petitioner's claim that his due process rights were violated when the Court failed to give an intoxication charge should be denied.

### C.  Prosecutorial Misconduct

Petitioner also argues that he was denied a fair trial when the prosecution "inflamed the jury['s] emotions, implied that petitioner was a gang member [without] proof, and denigrated petitioner as a 'liar' while vouching for the credibility of the People's witnesses." Pet., ECF No. 1 at 2. Petitioner failed to state these grounds for prosecutorial misconduct in the petition. See Pet., ECF No. 1. That error was corrected in the Traverse, where petitioner argued that he was deprived

of a fair trial when the prosecution was allowed to inflame the emotions of the jury by: (1) "referencing the impact of the victim's death upon family members," (2) "stating the petitioner was a gang member," (3) "misstating the evidence including the value of DNA evidence," and "(4) stating the petitioner was a liar and vouched for the credibility of their witnesses." Traverse; ECF No. 8 at 3.

The appellate court held that the prosecution's conduct did not deprive petitioner of a fair trial, because the challenged remarks were "within the broad bounds of rhetorical comment permissible in closing arguments," and were "fair response[s] to arguments made by defense in summation, or fair comment upon the evidence." Juarez, 98 N.Y.S.3d at 884 (quoting People v. Marks, 9 N.Y.S.3d 120 (N.Y. App. Div. 2015). The state court's determination that petitioner was not deprived of a fair trial due to prosecutorial misconduct was not contrary to or an unreasonable application of clearly established Federal law, because the prosecution's comments were brief, not egregious in nature, and the judge instructed the jury that the comments were not evidence. Thus, petitioner's claim for habeas relief on this ground should be denied.

In Darden v. Wainwright, 477 U.S. 168 (1986), the Supreme Court held that, in reviewing a petitioner's claim of prosecutorial misconduct, a federal habeas court must determine whether the prosecution's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (1986) (quoting Donnelly v. DeCristoforo, 416 U.S. 637, 643 (1974). In Darden, the Court held that the prosecution's comments did not deprive petitioner of a fair trial because the comments "did not manipulate or misstate the evidence" and did not "implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Darden, 477 U.S. at 182. Furthermore, the Court held that the prosecution's comments did not deny petitioner his due process rights in that case because "the

trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone," "the arguments of counsel were not evidence," and "the weight of the evidence against petitioner was heavy." Id. In United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002), the Second Circuit concluded that, in determining whether prosecutorial misconduct constituted a due process violation, courts should examine "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."

Here, the prosecutor's descriptions of the attack on Xochimitcl as "brutal" and "heinous," and his degradation of petitioner as "selfish," were not so egregious that they violated petitioner's due process rights. See Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) ("In order to grant relief, we would have to find that the prosecution's comments constituted more than mere trial error and were instead so egregious as to violate the defendant's due process rights."). Additionally, the prosecution's comments were limited to "short and fleeting" descriptions throughout the opening and summation, and thus were "much less likely to have had a substantial effect on the jury's verdict." Id. at 235. The prosecution's reference to the impact of the victim's death on family members was similarly not so egregious that petitioner was denied his due process rights. Furthermore, statements made by the prosecution during summation regarding DNA evidence on the knife found at the scene of the crime, and comments made about the credibility of the People's witnesses, were "relatively trivial" and thus "did not deny petitioner a fundamentally fair trial." George v. Edwards, No. 01-CV-6481(JBW), 2003 WL 22964391, at *5 (E.D.N.Y. Sept. 4, 2003) (denying habeas relief and concluding that prosecution's "attempt to draw conclusions from facts not fairly inferable from the evidence, his attempt to appeal improperly to the jury's sympathy, and his attempt to vouch for the complainant's credibility," were "relatively trivial" and "did not deny petitioner a fundamentally fair trial.").

Furthermore, the state court judge instructed the jury that comments made during opening and summation were not evidence. Trial Tr., ECF No. 6-1 at 16; Trial Tr., ECF No. 6-5 at 5. See Aponte v. Scully, 740 F. Supp. 153, 157 (E.D.N.Y. 1990) ("The trial court's instructions to the jury directed them to deliberate and reach separate verdicts on each count and not to consider the attorneys' opening statements and summations as evidence. . . considered in full context, the prosecution's arguments linking petitioner to both murders did not deprive him of a fair trial."). Thus, the state court's decision regarding the prosecution's comments was not contrary to or an unreasonable application of clearly established Federal law, and petitioner's claim prosecutorial misconduct claim should be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal in forma pauperis, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: October 14, 2021
        Brooklyn, New York